UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

C.W., a Minor, by and through
His Guardians and Next Friends, *et al.*,

    Plaintiffs,  Case No. 1:17cv465

    v.  Judge Michael R. Barrett

Board of Education of the Sycamore
Community School District, *et al.*,

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order. (Doc. 10). Defendant Joseph T. Deters filed a Response in Opposition (Doc. 17). During the telephone conference held on August 2, 2017, the Court requested additional briefing. Plaintiffs filed a Supplemental Memorandum in Support of the Motion for Temporary Restraining Order (Doc. 20); Defendant Joseph T. Deters filed a Response to Plaintiffs' Supplemental Memorandum (Doc. 21); and Defendants City of Montgomery and Sergeant Harris joined in Defendant Deters' Responses in Opposition (Doc. 22).

Also before the Court is Defendant Joseph T. Deters' Motion to Stay any Proceedings pending the Conclusion of the Pending State Criminal Proceedings. (Doc. 16)

For the reasons stated herein, Plaintiffs' Motion for Temporary Restraining Order is DENIED.

I. **BACKGROUND**

In the fall of 2016, Plaintiff C.W. was a twelve-year-old student attending Sycamore Junior High School ("SJHS"). (Doc. 1, ¶ 30). Plaintiffs John and Catherine Wood are C.W.'s father and mother. (Id., ¶ 20).

Plaintiffs' Complaint explains that in September of 2016, there were a number of social media websites maintained by anonymous individuals which featured so-called "scary" or "creepy" clowns to perpetuate a hoax that the clowns would be visiting communities throughout the United States. (Id., ¶ 31). These websites prompted social media users across the country to post comments on Twitter, Facebook and Instagram. (Id., ¶ 7). These comments included statements such as, "Come to Dallas," but other comments told the "scary clowns" to come to specific locations, events, and times. (Id.)

The "scary clowns" were a topic of conversation in the media and amongst SJHS students, including C.W. (Id., ¶ 32). On the evening of September 29, 2016, C.W viewed the "Clown.Clann" Instagram page. (Id., ¶ 33). C.W. viewed pictures and comments posted by the anonymous owner of the account as well as other Instagram users who had visited the page and replied the owner's posts. (Id., ¶ 8). C.W. then posted the following two comments: "DUMB FUCKS COME TO SYCAMORE YOU WONT" and "I'll square up to these [clowns]." (Id., ¶ 8). The posts were made under one of the several pictures posted on the "Clown.Clann" Instagram page, and therefore were only visible to individuals who specifically "followed" C.W. on Instagram or who specifically visited the Clown.Clann Instagram page, then clicked on the photo on which C.W. left his comments, and scanned through hundreds of other comments left under that photo. (Id., ¶ 37). The posts were not made on C.W.'s personal social media

2

page. (Id., ¶ 38). C.W.'s posts were visible for approximately two hours before he deleted them. (Id., ¶ 9).

The next day at school, Assistant Principal Damon Davis removed C.W. from class and began questioning him about the posts. (Id., ¶ 52). C.W. admitted that he made the two Instagram comments and confirmed that he deleted the comments shortly after posting them. (Id., ¶ 54). Davis informed C.W. that he was going to be suspended from school for ten days with a recommendation that C.W. be expelled pursuant to the District's policy on harassment, intimidation, and bullying, and because C.W. disrupted school. (Id., ¶ 60). After Davis finished explaining to C.W. that he was being suspended and recommended for expulsion, Sergeant Harris of the Montgomery City Police entered the room. (Id., ¶ 63). Sergeant Harris told C.W. that he was being placed under arrest for "Inducing Panic." (Id., ¶ 63). Sergeant Harris then handcuffed C.W. and walked him out of the school. (Id., ¶ 67).

C.W. was initially referred to the City of Montgomery Unofficial Juvenile Court. (Id., ¶ 81). Despite being pressured to "admit" to an offense he did not commit and agree to perform community service as a punishment, C.W. continued to deny the charges against him. (Id., ¶ 81).

On November 29, 2016, Sergeant Harris signed a Hamilton County Juvenile Court Complaint under oath, stating: "[C.W.] did cause serious public inconvenience by circulating a report/warning of an alleged/ impending crime knowing such report/warning was false, contrary to and in violation of Section 2917.31 of the Ohio Revised Code, a Misdemeanor of the First Degree." (Id., ¶ 82). As a result of this Complaint, the Hamilton County Juvenile Court started delinquency proceedings against C.W. the

3

crime of inducing panic. (Id., ¶ 83). C.W. denied the charges, and filed a motion to dismiss. (Id., ¶ 84). Plaintiffs allege that the Hamilton County Juvenile Prosecutor knew that the inducing panic charge should be dismissed, and therefore instructed Sergeant Harris to bring new charges against C.W. so that the case against C.W. would continue. (Id., ¶ 85).

On April 12, 2017, Sergeant Harris signed three new complaints against C.W. for telecommunications harassment in violation of Ohio Revised Code § 2917.21 (B) & (C). (Id., ¶ 86). The Prosecutor dismissed the inducing panic charge. (Id., 88).

Ohio Revised Code § 2917.21(B)(1) provides, in relevant part: "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." Ohio Revised Code § 2917.21(B)(2) provides, in relevant part: "No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening or harassing another person." A violation of these sections is a misdemeanor of the first degree. Ohio Rev. Code § 2917.21(C).

These charges against C.W are set for trial and a hearing on a motion to suppress on August 8, 2017. Plaintiffs allege that the ongoing prosecution is in bad faith with harassing and illegitimate motives. (Id., ¶15). Plaintiffs allege that there is no reasonable expectation that the prosecutor will obtain a valid conviction based upon C.W.'s two posts from his home to an anonymous social media site. (Id., ¶15).

Plaintiffs bring the following claims pursuant to 42 U.S.C. § 1983 and state law: denial of First Amendment right to free speech; (2) violation of Fourth Amendment right

4

to be free from unreasonable seizures and unlawful arrest; (3) violation of Fourth Amendment right to be free from unreasonable searches; (4) violation of Fourth Amendment right to be free from excessive force; (5) violation of Fifth Amendment right to *Miranda* warning; (6) intentional infliction of emotional distress; and (7) loss of consortium.

In their Motion for Temporary Restraining Order, Plaintiffs seek to enjoin Defendant Hamilton County Prosecutor Joseph T. Deters from proceeding to trial on August 8, 2017 against Plaintiff C.W. in the Hamilton County Juvenile Court.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 65, the purpose of a temporary restraining order "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

The Sixth Circuit has held that the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007). In determining whether to grant or deny a temporary restraining order, this Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted).

By the unanimous agreement of the parties, the Court is deciding whether injunctive relief is warranted based upon the pleadings. The parties also agree that as a preliminary matter, the Court must address the issue of whether it should abstain from the exercise of federal jurisdiction in this case under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Accord Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 970 (S.D. Ohio 2010) ("a court must first address the *Younger* issue prior to engaging in any analysis on the merits of the case.") (citing *Tenet v. Doe*, 544 U.S. 1, 6, n. 4, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 100, n. 3, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

### B. *Younger* abstention doctrine

As the Sixth Circuit has recently reiterated: "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). One category in which *Younger* applies is the situation found in *Younger* itself: when there is a parallel state criminal proceeding. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013). Plaintiffs do not argue that *Younger* is not applicable. Instead, Plaintiffs maintain that C.W.'s situation falls within one of the exceptions to the *Younger* doctrine. These exceptions include bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue. *Doe v. Univ. of Kentucky*, 860 F.3d at 371 (citing *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996)).

Showing flagrant unconstitutionality is a high bar: "a statute might be flagrantly

6

and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Doe v. Univ. of Kentucky*, 860 F.3d at 371 (quoting *Younger*, 401 U.S. at 53-54).  Plaintiffs cite several cases which demonstrate that Ohio Revised Code § 2917.21 (B) has been narrowly interpreted to only apply in cases of intentional harassment.  Plaintiffs argue that C.W. did not have the purpose of threatening any actual real individual and he did not have knowledge that his words would be viewed as a threat by any real individual.  In essence, Plaintiffs argue that the statute does apply to his posts, and to apply it to his posts is a violation of the First Amendment.  However, that does not mean that Ohio Revised Code § 2917.21 (B) violates the First Amendment in whatever manner it is applied.  Plaintiffs tacitly admit that the statute is constitutionally applied where there is evidence of an intent to harass.  Therefore, Plaintiffs have not shown Ohio Revised Code § 2917.21(B)(1) & (2) are flagrantly unconstitutional.

Plaintiffs have also failed to show a pattern of bad faith prosecution and harassment against C.W.  As this Court has noted, cases where bad-faith prosecution of an individual may serve as a proper exception to the *Younger* abstention doctrine "are exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court."  *Kalniz*, 699 F. Supp. 2d at 973.  This Court has cited two examples where this exception applied: "a Texas city police investigation in which officers repeatedly engaged in searches and seizures which they knew to be unlawful and beyond the scope of statutory authority, and a Southern District of Ohio case in

7

which the county prosecutors had filed twelve separate actions against the federal plaintiffs in order to harass the plaintiffs and drain them of all of their financial resources." *Id.* at 973-74 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir.1992); *Video Store, Inc. v. Holcomb*, 729 F.Supp. 579, 580 (S.D.Ohio 1990)). As another example of this harassment exception, the Sixth Circuit has cited a case discussed in *Younger*: *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). *Doe v. Univ. of Kentucky*, 860 F.3d at 371. That case involved repeated threats by prosecutors which were designed to discourage individuals from asserting their constitutional rights. *Id.* (citing *Younger*, 401 U.S. at 48). Those types of repeated threats, or other similar actions, are not alleged here. Plaintiffs cite to only one instance where C.W. made posts and was prosecuted for the statements made in those posts. Therefore, *Younger* abstention is warranted.

While *Younger* abstention is proper, this matter should be stayed until the conclusion of the state criminal proceedings, rather than be dismissed. *Kalniz*, 699 F. Supp. 2d at 975 (explaining that where a plaintiff is bringing constitutional civil rights claims in a federal court case in which *Younger* abstention was proper, the stay protects against the possibility that the statute of limitations could deprived the plaintiff of the opportunity to present the merits of her damages claims); *see also Meyers v. Franklin Cty. Court of Common Pleas*, 23 F. App'x 201, 206 (6th Cir. 2001) (and cases cited therein).

### III. <u>CONCLUSION</u>

Based on the on the foregoing, Plaintiffs' Motion for Temporary Restraining Order (Doc. 10) is **DENIED.**

9

Defendant Joseph T. Deters' Motion to Stay any Proceedings pending the Conclusion of the Pending State Criminal Proceedings (Doc. 16) is **GRANTED**.  This matter shall be stayed until the conclusion of C.W.'s state criminal proceedings.  The parties are **ORDERED** to provide the Court with a status report within ten (10) days of the conclusion of the state criminal proceedings.

**IT IS SO ORDERED.**

                                       *s/Michael R. Barrett*
                                  JUDGE MICHAEL R. BARRETT